Mr. Martin. May it please the Court, my name is Scott Martin. I represent Mr. Daniel Lomas in his appeal to the two special conditions of supervised release that appear in the District Court's written judgment upon revocation when his latest term of supervised release was revoked. Could you raise your voice a bit, please? Yes, Your Honor. The two special conditions at issue are an educational condition stating that Mr. Lomas is required to, quote, enroll and participate in an educational program designed to receive a high school diploma or its equivalency, end quote, and a mental health condition stating that he is required to, quote, participate in a mental health program as deemed necessary and approved by the probation officer, end quote. Mr. Lomas contends that the District Court abused its discretion when it included these two conditions in the written judgment upon revocation without orally pronouncing them at the revocation hearing. He contends that this was a violation of his constitutional right to be present at sentencing. He also contends that in any event the mental health condition cannot stand because it represents an unconstitutional delegation of the judicial function to the probation officer. He asks that you vacate these conditions. So his argument is constitutional, it's not statutory and it's not rule-based? It's constitutional, Your Honor. So you're not saying a violation of Rule 32.1 and you're not saying a statutory violation of 38.53, the requirement that things be in writing? It's just a constitutional argument? It's just a constitutional argument, Your Honor. The non-delegation argument based on the Constitution. Today, Your Honor, I'll first address the educational requirement and the conflict between the written judgment and the oral pronouncement. Then I'll address the conflict between the oral pronouncement of the mental health condition and the written judgment. And finally, I'll address the delegation issue. The educational requirement was a special condition that needed to be orally pronounced, but it wasn't. It was not listed among the mandatory or the standard conditions enumerated in 3583D of the written judgment form that's used in the Southern District of Texas and that was used in this case, which is form. Part of the problem in this case is it's a 3583 and it's the revolving door. So the gentleman's convicted and sentenced originally in 2008, right? Yes, Your Honor. Okay, and then he's revoked once, then he has a modification, then he has another revocation. So the sentencing judge is seeing this gentleman over and over and over again, trying to craft conditions as his situation changes. That's fair to say? That's fair to say. So the original, if we go back to the original sentence, all three conditions that he get, educational requirement, mental health and drug treatment, those are all properly imposed, right? The original conditions? Yeah, 2008. Yes, Your Honor. Okay, so if the court at each subsequent time where he violates a condition or there needs to be a modification, if the court had just said, and I want to be clear, I'm reimposing the original supervised release conditions, that would be fine, right? Yes, Your Honor, that would be fine, in fact. So the whole issue here is that the gentleman keeps violating and as the court's making adjustments, there seems to be sort of discrepancy between what gets written down versus what's said in the final 2014 revocation? That's correct, and our position is that what is important here for purposes of notice of what the conditions are going to be in the written judgment is what is actually said at the revocation hearing because this is a, as this case is an example, when this particular judge intends for a condition to be reimposed, he says so at the revocation hearing. He did so at the 2012 revocation hearing where he said, quote, special conditions of recommended supervised release will be the same as those that had previously been imposed. That's at page 171 of the Record on Appeal, and at the 2013 hearing where there was a modification, the court said the other terms of supervised release will be the same. But in the 2012, he does say education, but then in the written judgment it doesn't appear. That's correct. So wouldn't the oral control, so then education was still a condition? We can see that, Your Honor, yes. It was still, education was continuous, was there continuously up until this current revocation, at which point he did not say that that condition or the mental health condition were reimposed. Why isn't that just a statutory violation that you get, it's 3583F, you get it in writing, it wasn't in writing? Why are we, why are you asking us to reach a constitutional rule? Well, Your Honor, if this court is willing to find a statutory violation, we would, we would. Well, then my, I mean, I don't know, you tell me where we can go, but it would seem like he intended to impose most of this. He's trying to help the defendant get right before he gets out there. So if it's a statutory violation, maybe we've got authority to just say, okay, it was an error, but it's a ministerial error. Let's remand it back and let's clarify. Let's not remand with instructions to strike anything. Let's just let the judge get what he intended to impose. Why not do that? Well, our position is that it is a constitutional violation of his right to be present at sentencing, not to, uh, not to articulate both. Well, because each time he appears, it's a new sentence, isn't it? Uh, yes, Your Honor. It is. It's a new set. It's a new revocation sentence. So the right to be present at the sentencing is a right which extends to each time that he appeared. Yes, Your Honor. I agree with that completely. And in fact, this case is just like the United States v. Tang, uh, which was cited in the briefs where the dating restriction there was found, uh, to be an additional restriction that was not orally pronounced and therefore, uh, needed to be stricken. And if Your Honor, if I may, I'd like to now address the mental health condition and why that needed to be orally pronounced. So before you get to that, your position, what, what's your authority for the proposition that if he wasn't present at sentencing, although he was present, I believe, in 1314, he's always present in court. The point is that there may have been an, there orally something that was imposed didn't end up in his written statement. Yes, Your Honor. It was a conflict and a conflict between the oral pronouncement and the judgment is something that's, that this court has said is an abusive. So silence equals conflict. If court doesn't impose something but it ends up in the writing, that's a conflict. Yes, we can't just send that back because there's ambiguity in the whole history of what happened to this man. It isn't as if there's a stark conflict in a normal direct sentencing. What you've got is a history of ambiguities and confusion. So why, what, what authority says we can't order that there be clarification as distinct from striking? I have no authority that there can't be a clarification, but I do have authority that in the past this court has vacated the condition and remanded with instructions to strike United States v. Tang. Okay, but what, are you amenable to clarification? The Second Circuit did that in the Peterson case. Well, Your Honor, we are, we're, our position is that this, that the condition should be struck from completely from the written judgment and that it, that this court should follow United States v. Tang's example and strike. Did we say in that case that's the only remedy? No, we didn't say that's the only remedy, but that was the remedy that we, we, that was chosen. And it was also the remedy in Bigelow. But it wasn't the remedy in the Second Circuit of Peterson case. No, it was not, but it was, it's the remedy in prior Fifth Circuit cases and that's the remedy we're seeking here, Your Honor. But what did we say in Babineau? Uh, well, in Babineau we, we remanded, uh, we, we vacated the condition and remanded with, uh, let's see, vacated in part, and the matter is remanded to the district court with instructions to conform the written judgment to the oral pronouncement at sentencing. And that's really if you want to hear. That's the, that's the remedy we'd like. All right. What's the constitutional requirement that we do that since you only rely on the Constitution? It's, well, it's, it's the right to be present at sentencing. So the, the, what's the, the remedy? Striking. Striking versus remanding for resentencing. What is the constitutional basis for saying that's the only remedy that we can do constitutionally? I don't have a case saying that. That's the only remedy. I have, I just have that these are the remedies that this Court has imposed in prior cases. You agree if we perceive ambiguity, it's a different story. Right. Your Honor, if, if there's an ambiguity, you could remand, but in this case, it's, there's a conflict. As maybe as to the education, but if you're, you were going to move to the mental health, it seems like sort of pregnant in the entire transcript was the district court's acute awareness that he should be talking to his doctor. He should be speaking and listening and adhering and obeying his doctor. Doesn't that suggest that the district court was under the full impression that it was always going to have mental health? It just doesn't show up in the. No, no, Your Honor. I don't think that's the case at all. If you look in the context, the judge in this case had ordered the marshals to provide Mr. Lomas with reasonable access to treatment, which he was seeking on his own. So there's no evidence that he was actually ordering that he undergo supervised treatment. I mean, Mr. Lomas was, was, was not resistant to treatment. And when he asked for a reduction in bail so that he could go to a preexisting medical appointment to address these issues, the court granted him reasonable access. So, uh, I think it would be a stretch to say that the court here was ordering that he participate in supervised treatment. But it was in the original sentence. It was in the revocation sentence. You agree with that, right? Yes. So what was the change circumstance, the mitigating evidence that your client gave that you think led the district court to change its mind in 2013 and 2014? Well, it, well, for, for starters, as early, I mean, as late as 2012, the court was still, was not absolutely certain that he had a mental condition that needed treatment. I mean, at the 2012 hearing, uh, you know, the court said that, uh, basically that, um, I don't know whether he has a mental health condition or not, and I think he needs to get analyzed. Okay. At this hearing, when, when Mr. Lomas had moved for reduction in bail so that he could go to a preexisting appointment, Mr. Lomas informed the court that he has bipolar disorder and that was seeking treatment on his own, and the court, in this instance, granted him reasonable access to that treatment. But this wasn't a situation where the court was ordering that he, uh, receive treatment for this condition. If you win, there's nothing to stop the district court or the government to move to enlarge his conditions, right? 3583 allows them to come right back in the door and add it on if they wanted it. If they wish, yeah, Your Honor, they could, they could always seek to do that in the district court. Um, now, the government, well, Your Honor, with my time now, I, I, I see my time is running short, so I'd like to address the impermissible delegation argument. I'm anxious to hear it. I'm sorry, Your Honor? That I'm anxious to hear it. Okay. The, Your Honor, the, the, the circuits agree that a court may not delegate to the probation office the ultimate decision of whether a defendant must participate in treatment. Before we get to it, I said I'm anxious to hear it, but now I want to make sure it's, it's okay for us to examine it under an abuse of discretion standard rather than some plain error review. Uh, that, is that in dispute or is it conceded that it's abuse of discretion? It's, it, the government, it's my understanding the government's conceded that it would be abuse of discretion on the delegation. Okay. The mental health condition here is just like the one that are very similar to the one in the Eleventh Circuit in Nash found to be an impermissible delegation, uh, to the probation officer. And I'd like to read you the relevant portion from Nash, page 1306. Uh, the court in Nash said special condition one of Nash's supervised release, uh, constitutes plain error because it delegates the ultimate responsibility of sentencing to the probation officer. It states that, quote, as deemed necessary by the probation officer, the defendant shall participate in mental health counseling. This order is subject to the conditional phrase, as deemed necessary by the probation officer. In other words, whether Nash shall participate in mental health counseling turns on the judgment of the probation officer, not the court. Well, it's the same, the same reasoning applies here. Although the condition in Mr. Lomas's case says that he's required to participate in a mental health program, this order is subject to the conditional phrase, as deemed necessary by the probation officer. Thus, whether Mr. Lomas is required, uh, to participate turns on the judgment of the probation officer. Uh, was that true in the 2008 and 2012 written judgments too? Same defect, just not your client didn't pursue attack? It's the same defect. Yes, Your Honor. It's the same language, exactly the same way. So what's the remedy? Uh, again, Your Honor, we, we, we say that there, that it's clear that this is a conflict. Uh, I mean, I'm sorry, that it's clear that this is an impermissible delegation, that the remedy would be the same one as a Nash. We just strike the as deemed necessary by the probation officer part, so he's required unconditionally to go. It would be to strike the as deemed necessary. It would be to remand when the instructions say that if the court intends to impose this treatment, it must strike the as deemed necessary. He's required to be, to go. If, if the court finds that that, that's, that's justified under these circumstances. But, uh, the court didn't make that determination here because it's essentially delegated to the, uh, to the probation officer, uh, whether, uh, to participate. I'm a little unclear. So then you, this secondary argument, you're saying it does have to go back for clarification as to this because otherwise he gets mandatory. Is that what your position? Uh, yes, Your Honor. I mean, it's, it, it needs to go back. It's, it's clear that the as deemed necessary language has to come out, but it's unclear whether the district court even wants in the first place for him to participate in mental health treatment. Thank you, Your Honors. Good morning and may it please the court. Andrew Gould for the United States. Whether reviewed for plain error or abuse of discretion, the district court committed no reversible error in imposing the mental health and educational special conditions of supervised release and its judgment should be affirmed. I'd like to address the issues, um, in reverse order. That is by beginning with the impermissible delegation issue and then discussing the standard of review. Although on the impermissible delegation issue, I want to clarify the government is, has not conceded that abuse of discretion review applies to that claim. We've consistently argued that plain error review applies across the board to Mr. Lomas's claims. In part three a of our brief, we argued that if plain error review applies, then this court's precedent in Bishop forecloses Mr. Lomas's claim. I, I'm surprised you're starting first with a plain error argument and then the non-delegation. First of all, we wouldn't reach those if there is a conflict. In other words, if the oral doesn't, isn't consistent with the written, we don't need to get to the non-delegation question. If the oral will, I believe your honor, I believe that even if there is, Oh, excuse me. I think I understand if you're saying if there's a conflict between the two, then we don't even reach that. I apologize. That's correct. But if that's correct, the secondary point is how, how can the government seek to avail itself of plain error review if the individual had no opportunity in court to lodge an objection because the district court didn't announce the conditions that show up on the written judgment. That's correct. We, we've never contested that the district court failed to orally pronounce the educational and you are, you just a minute ago said you're asking for plain error review, which seems like a catch 22 predicament. Well, what we're arguing is, is an exception that this court discussed in Roland and Roland. Well, that only applies to the mental health, right? The mental health is a recommended given the predicate facts that wouldn't apply to the educational, but the educational condition we argue is a recommended condition under the circumstances. It's not you have any case to support that. Uh, we, uh, we've cited the McKissick educational as the education we cited in our brief McKissick. Again, I apologize for originally stating in that case that the district court orally or did not orally pronounce it. But in McKissick, in the seventh circuit still did discuss the recommended nature of the educational condition. And let me cite the provisions, um, that the seventh circuit relied upon and which the government relies upon. It's true. Mr. Lomas is correct that 5d 1.3d of the guidelines, there is an educational condition is not a recommended condition, but under 5d 1.3c five, a standard condition of supervised release is that the defendant shall work unless excused by the probation. Your position is these guideline provisions somehow put them on notice that he should just object in court and say, judge, I know you haven't given me these conditions, but I'm thinking they may show up on my written judgment. So here's all the mitigation. Plus, I'm going to anticipate there's going to be a delegation problem. So I want to speak to that. And if I don't, I've got plain air review. Well, but in this case, your honor, since 2008, these conditions kept being imposed. Mr. Lomas might be, it would be in a different position had this, let's say, been in 2014. He was appearing for his first sentence for the first time. He has no idea what special conditions of supervised release may or may not be imposed. But in this case, since 2008, the district court had consistently imposed it. And so the question again, looking to Roland is, did he have the, did he have the opportunity to consider and comment on these conditions? Yes, it's true. The district court did not worry orally pronounce it, but given the fact that, that the district court had consistently imposed it when he entered court in 2003, it's a new sentence each time. Yes, we do. We do agree. It's, well, in 2008, in 2012, in 2014, there are new judgments entered. We do agree with that. Constitutional rights don't dissipate based on the judge's consistency in imposing the same sentence each time. No, well, no. A defendant's constitutional rights continue all throughout for each one. But again, we're arguing that under this exception in Roland, he still had, he still could have commented on, he still could have considered those objections at the time. And looking to the facts of Roland, what if he just assumes, you know, time's passed, I've done better, I've done worse, and therefore, you know, there are mitigating circumstances. You know, judge, I don't need to get the educational high school diploma anymore. He's just thinking that, but the court isn't telling him he's going to get it. So he wouldn't know to offer mitigation, which is what 32.1 gives him the right to do. I suppose that's true, Judge Higginson, but he's, at the same time, he still could have argued at the time, Your Honor, I understand that in 2008, in 2012, and in 2013, you've consistently imposed it. You know, now I'm, you know, I'm in the class right now. I don't need it, or . . . But why would he argue that when the judge didn't impose it? I mean, I think that's a bit much. Respectfully, Judge Owen, it's based on the court did. I don't think you're required to object when the district court is inconsistent. I mean, the court said what he said, and you can't, I don't think you're required to think of things, as Judge Higginson said, might show up in your judgment that would be inconsistent. So then, then, Judge Owen, it turns on whether or not the condition is recommended, because as this, as this court has held, a recommended condition, a recommended special condition need not be orally imposed. If it's in the standard form, right? Not necessarily, no, not necessarily, Judge Higginson, although that's, that can, that is one facet in which a condition can be recommended. Isn't this case just one where, through no fault of the district court, the district court is trying to be sensitive to his revolving door, and, and, and just again and again he comes in, and the circumstances have changed, and you just, unfortunately, we end up with a written judgment that doesn't conform. Not a huge deal, because you can always move to but probably consistent with the law, it's got to go back, so we get an exact in-court sentence that's what the district court, if, if those, if that premise is acceptable, and I know you've got arguments against it, what I'm interested in is does the law allow us to remand for clarification as opposed to strike and conform? I believe so, Your Honor. I believe, uh, you cited the Peterson case, um, and we've cited it in, I believe, uh, Part 3B of our brief. Now, granted, this is about the impermissible delegation issue, but there's a case, an unpublished case of this court, Calhoun, that cites numerous unpublished cases in which this court has, uh, remanded. Is that in your brief? Yes, it is. Yes, it's, I believe, in Part 3, uh, either 3B or 3C. It's at the, it's at the tail end of our brief. Now, but again, that relates specifically to the impermissible delegation issue because there the court's declining to reach a constitutional issue, but I do believe that the logic still applies, that if, if this court is to find that there's just an, that based on the circumstances, there's too much ambiguity, the proper, uh, the proper remedy would not be to vacate and excise the conditions with instructions. It would be to remand. But isn't that what we did in Babineau? In Bab, in Babineau, you're, that's correct, Judge Graves. We vac, this court vacated and excised generally, um, where there is a... Why, why wouldn't that be appropriate in this case? I think, because what we're arguing is that in, given the, given the uniqueness of this case, you know, this is not the case of a defendant, again, who's appearing for the first time. This is a case in which, as Judge Higginson said, the district court is trying to do its best with this defendant who keeps coming in again and again. All it's got to do is make an oral pronouncement and then make sure that oral pronouncement ends up in a written judgment. That's all it has to do. I... I know that may be a lot to ask, but... Yes, I, I agree that all the, if the district court had... Since you can move to enlarge anyway, what difference does it make? Yeah. I mean, if we just say, we remand it with instructions to conform, you can immediately move to enlarge. And what's the, what difference does it make? It... You're going to have a new hearing one way or the other. Perhaps. With the defendant present. Perhaps, but the defendant has appealed to, here we're, the defendant has appealed his sentence and we're responding to his argument. I'm just saying, either way, you're going to have a new hearing with the defendant present, so what difference does it make? What difference, if... If we remand and say, with instructions to vacate, you're going to move to enlarge, I assume. I, I, I mean, I don't want to speak for what will happen exactly on remand if it's, if there are instructions to that effect. You're right, we could do that. How much time's left on his... I'm sorry, on his supervised release, I, he, it was a 21-month term of supervised release. I believe he finished his prison term at the, somewhere near the end of 2014. So, he probably has another year or so left, approximately, of, of his recommenced supervised release. So, yes, the government, yes, the government could simply move to enlarge his conditions, but we're simply saying that under the circumstances here, it's unnecessary, given the unique facts of this case. If I may, I'd like to address... What's your, what's your best case that we have the authority to remand in it for resentencing? To, for clarification? Clarification or resentencing? It would be the Peterson case from the Second Circuit, and then it would be the Calhoun unpublished decision, which collects other, which collects other unpublished decisions from this circuit. I'm not aware of any published decision of this circuit stating that that's the remedy, but we would argue under the unique facts of this case, that would be the appropriate remedy. Turning to the impermissible delegation issue, even if a review is under abuse of discretion, this condition does not impermissibly delegate judicial authority to the probation office. There's a lot on which the parties agree on. We agree that the circuit courts are in accord that a district court may not delegate the ultimate decision of treatment to the probation office, but it may delegate the details of that treatment. There are, however, two principles, additional principles that some of the circuit courts have elucidated that Mr. Lomas does not discuss. The first is that a condition should be reviewed in light of the facts as viewed by the entire record. And second, where there is a broad condition, it should be construed narrowly to avoid infirmities, if possible. Applying those two principles here, it's clear that the district court was delegating only the details of Mr. Lomas' mental health. So the probation officer wouldn't have the discretion to determine that the mental health treatment was not necessary at all? No. So after, so the probation officer could presumably announce after Mr. Lomas has started mental health treatment that based on, you know, what's happened, based on his meetings with the mental health professional, it's no longer necessary. He could report back. But our interpretation of the condition is that the district court is ordering that he receive treatment, period. What that treatment is, the details of that treatment, is what is delegated to the probation officer, and that is... You're not suggesting that a probation officer is qualified to determine what the details of mental health treatment ought to be? No, but what the probation office works with the mental health professionals to determine what these details are. I mean, the conditions across the circuits are never written, at least not that I'm aware of, in the form of the defendant shall participate in mental health treatment, a mental health professional shall determine the details of the treatment. They're always written in terms of what the probation officer is doing because, of course, a district judge can't control a third-party mental health professional who's not connected with the court, but a probation officer does assist the court. So the probation office is working with the relevant mental health professionals in determining, okay, here's the course of treatment. And my understanding in these types of cases is essentially the mental health professionals that probation office works with. Do you have any cases where language exactly like the language used here has been deemed appropriate and not an unlawful delegation of authority to... No, Judge Graves, not the exact language. The language varies from circuit to circuit. And this language comes from the Southern District of Texas's Standard Judgment Form 1996-10. And that's why this issue, I believe, keeps arising in this circuit because, although of course a district court can impose whatever condition it wants, it can word it, this is the standard special condition, the language that then-Chief Judge Black approved. So I'm not aware of the exact condition, but let me discuss the Nash case on which Mr. Lomas relies and why it's different. But before you get there, on direct appeal at the outset, we implied that were it not for plain error review, this particular language would be problematic and cited approvingly the Heath case, correct? I'm sorry, I didn't hear that. On direct appeal. Am I right on this? That we implied that this particular language would be vulnerable, citing Heath? No, I'm not aware of that, Judge Higginson. I'm not aware of any presumption that you, at least that this circuit has applied to construe such a condition with vulnerabilities. And in fact, we've relied on cases from other circuits saying the exact opposite. But the original appeal in this case, in that we applied plain error review. Correct. But we, it wasn't the language suggesting that were it not for plain error review, the language used here would have vulnerability and we cited approvingly the Heath decision. I apologize, I understand your question. Yes, that's correct. In the, in this case, in this court's 2009 unpublished opinion, it discussed that, it cited other cases in which, in which similar language has been found to have problems. But as our brief goes through, there's similar language, maybe not for mental health treatment, and it could be for sex offender treatment, for drug treatment, but using the similar as directed, as deemed necessary, as approved language that the circuit courts continuously find to be okay. And the reason is because they looked at the facts as viewed by the entire record and they construe it narrowly. So in, for example, in Pruden, which is a third circuit case from 2005 with a mental health treatment, there, the district court was, excuse me, the circuit court was unable to construe the condition narrowly because there were no facts in the record supporting the defendant's need for mental health treatment. That's pretty ponderous, though, to ask appellate courts to go back and try to discern, piece together from the record what was intended. Boy, it seems to me the Sentencing Commission, the Department of Justice may want to recommend the Sentencing Commission to say this is the uniform language. Don't use the word required with a comma as deemed necessary because there's an internal inconsistency. I agree, Judge Higginson, that if, that if the language were amended, this issue wouldn't arise. And it's coming up all over the place. Yes, that's correct. It is coming up all over the place. We believe that it is this circuit and the D.C. circuit are the only two circuits that have not had a published opinion on a treatment type condition, which is why this keeps coming up. Our position is simply that you can interpret the condition so as not to construe it with constitutional infirmities, given again it's irrefuted that at the time of sentencing he suffered from bipolar disorder. His own counsel admitted it at R08-202 at the sentencing hearing. She stated Mr. Lomas is, is, not was, is struggling with a very serious medical condition. Before that... Obviously these conditions could be vital in terms of a person out yet who has sort of serious mental problems. So the problem out there and the explosive nature of it is significant enough, you'd think if there's so much disarray, the department would recommend that the commission consider a uniform treatment. I know, whether any proposals been put forward? I'm not aware of any proposal, Judge Higginson, but the point is well taken. Um, but what we're arguing here again is that given the facts of this case and what in the district court's actions and statements here, you know, a week before the revocation hearing and denying Mr. Lomas' motion to reduce his bond, the court ordered the US attorney to coordinate with the US Marshal Service so that he have proper medical evaluation and medication for his bipolar disorder. Then at the hearing, uh, during a dispute between Mr. Lomas and the court about the court's receipt of medical records, the court explained, well, the reason I did this was because I was concerned that he received medical treatment and evaluation. And then finally, at the close of the hearing at ROA 208 and 209, uh, the district court directly addresses Mr. Lomas and says, pay attention to your doctor's diagnosis and do what they say, take medications. This isn't a recommendation that he just go off on his own and continue his private treatment. If that were the case, then why would the court have ordered, uh, or why would the court have revoked his supervised release? In that case, it wouldn't have needed to. It could have just, uh, it could have just ordered him to continue with his, uh, super, uh, with his privately, uh, with his privately retained doctor and the district court would take no adverse action. The district court here was clearly intending that he receive mental health treatment while permissibly allowing the probation office to determine the details of that treatment. If there are no further questions, we ask that you affirm the judgment of the district court. Thank you. Mr. Stone, may I just like to address, um, the issue of, uh, the Ruland case and whether this condition was a recommended condition, the mental health condition was a recommended condition that did not need to be orally pronounced. Um, important to Ruland was the fact that in that case, the mental health condition was categorized as a standard condition in the pre-printed judgment form that was used in the Western District of Texas. And in this case, however, uh, the judgment form did not have the mental health condition as a pre-printed, um, uh, condition. Now, and the fact that, that, that this issue of what's in the judgment form was important, not just to Ruland, but to Bigelow and also to Torres Aguilar. If you look at footnote three of Torres Aguilar, uh, where the court talks about the importance of the fact that the, um, that the dangerous weapon restriction was a recommended condition in five years. This is all just trying to get a ditty of notice. We, uh, whether there's a conflict between the oral pronouncement. Right. But if he had noticed, then you can imply that he, yes, your honor, you, you would, he would have noticed from the pre-printed judgment form that this was most likely going to be one of his conditions that was so in Torres Aguilar. But he'd have noticed too, through his lawyer, if the guidelines said, if you have a mental health problem, we, it is recommended that this be given. There's notice there too, legally. Well, your honor, again, in, in, in these three cases that I've cited to you, that the fact of whether or not it is in the judgment form is something that, that they found to be of, of, of importance. I mean, in Bigelow, uh, the court found that, uh, that. Get back just a minute. If your argument on non-delegation is get back to the district court for clarification and, and appropriate tinkering and you give what he needs to get. It's a little, and you also acknowledge that they can turn around, move back in to enlarge and add the other ones. It's a little hard for me to understand why you wouldn't just want us to remand for clarification the whole thing, especially for a defendant that repeatedly violates. So it's largely in his interest. This judge is doing its best to keep getting the conditions appropriate, but admittedly there's some uncertainty with the written. So, but you, you still are arguing for a very strict bifurcated relief. We want to get clarification on the Don delegation, but we want to strike the other two no matter what, even if they can come back in. Your honor, we'd first argue for striking on the fact that there's a conflict between oral pronouncement and judgment. Striking completely. Strike, strike the entire thing. So he's got no conditions for the last year of this. Nothing. No mental health condition. On the, with regard to the delegation issue, we've conceded that if there's some ambiguities there, that if, if you don't find there's a conflict here, that, that you should at least remand to clarify that whether the court really intended this as deemed necessary language to be in there because it was not, uh, because that, that's an impermissible delegation to the probation officer is what our argument is. Um, and another, um, issue I'd like to address briefly is this, this, the breadth of the delegation in this language, uh, the 10th circuit in bear and Mike, which are cases cited in the government's brief have raised issues about whether a court can delegate to the probation officer decisions about whether, uh, a defendant can, has to undergo inpatient versus outpatient treatment. And, and this, the way this condition is worded here is so broad that it would at least appear to be delegating that decision to the probation officer. And we think that would be impermissible certainly under the 10th circuits decisions in bear and Mike. And finally, to address one quick thing that Judge Higginson raised, uh, Lomas does cite to Heath and Heath is the 11th circuit case that is relied on by Nash, which is the case that I discussed. Your Honor, if there are no further questions, we'd ask you, uh, to grant us the relief that we've requested, which would be to vacate the condition and remain with instructions to strike based on the conflict issue, strike the whole condition, or if you reach the delegation issue to at least remain with instructions to clarify. Thank you. Thank you.